Good morning, your honors. My name is Richard Kellner. I'm here on behalf of Ms. Williams and the class. I'd like to reserve two minutes for rebuttal. You may do so. Just watch the clock. I'm going to keep my left eye on it, right eye on it. Very good. Your honor, this order denying class certification should be denied for the two reasons that Judge Wu failed to apply the correct standard in determining the class certification motion. The first aspect is Judge Wu disregarded plaintiff's claim in its entirety that Veolia's company-wide use of recovery time does not satisfy the California requirement for 10 minutes of off-duty rest breaks. And this goes squarely with this court's decision in the United States v. ConocoPhillips that a court can't disregard a theory in rendering its decision. And here our claim was that any time that somebody is having a recovery time instead of a rest break, that in itself is not the equivalent of a rest break because they're not completely relieved of duty. Okay, we're here on an abuse of discretion standard, and the issue is whether individual issues predominate. Am I focusing on the center of this case? I think that the question of abuse of discretion occurs if the court applies the wrong theory or ignores a case, and that's per se an abuse of discretion. And that's what this court has ruled on repeated occasions. And that's why, even though it's an abuse of discretion, it is a per se abuse of discretion if the wrong standards have been applied. Are the wrong standards with respect to whether individual issues predominate? No. The wrong standard is if you're determining a class certification motion and a plaintiff has a theory of how the class has been harmed on a wholesale basis, and the court disregards it. And if you look at the court's opinion, there's absolutely no mention of plaintiff's theory that this recovery time cannot constitute the equivalent of a rest break. I think you may be mischaracterizing what I understand the district court to have done. The district court understood that there was a company policy, but the question was because of the four different categories of drivers and all of the various factors that weigh into causes for delay, it seemed to me that Judge Wu was saying, I'm going to have to have, in essence, many trials on each driver and each type of route in order to determine why rest breaks were not being accorded these four categories of drivers in each of the runs that they made. So how did the district court abuse its discretion in weighing that consideration in trying to resolve the overarching question of whether or not they were denied pay for rest? Okay. And I'm going back to two aspects to that. The first is that let's presume for argument's sake that the recovery time itself lasted no more than 10 minutes. Our argument is that that time itself does not constitute a rest break under California law because they were not relieved of their duty. In fact, Ms. Tompkins testified that part of the recovery time itself was to make sure the buses were safe. So Judge Wu didn't address that issue, that theory. And if we go back again to the United States, the Knight-Steele case, you can't just wholesalely say, I'm not going to address that theory. You have to address the theory. So is your position that your proof would show that in every case, even if there was a sufficient amount of time to stop the bus or stop the limousine or stop the disabled van or whatever the various conveyances were, that there would be no actual rest, that the people were on duty the whole time cleaning up the conveyance, whatever they needed to do in order to get ready for the next run? And I'll answer this in two ways. The first is that there would be instances for each driver during their career that that would not add up to 10 minutes. Yes. And that, I think, is the other aspect of the decision Judge Wu made that was incorrect. Under California law, and I think if we look at the recent Walmart case as well, we have to look to see what is the injury. And I think he used the wrong standard for determining injury. Injury in the context of a class certification wage in our case is that was each particular employee injured at least once? Because that's really the question that Judge Wu overlooked. What Judge Wu looked at was whether or not I can prove precisely the injury of each employee at the get-go. And what we have here is a slightly different situation. What we have is that because of the nature of this recovery system, and I think the evidence is very strong in this regard, it's inevitable that a driver will fall short. The whole purpose behind the gap of recovery time is that it's there to take up, to make sure the buses run on time, and inevitably, as the testimony is, that there will come times when it's compressed to less than 10 minutes. What do we do with the situations where, let's take the paratransit, where there's a no-show and all of a sudden the driver has a huge gap and maybe sits for an hour and a half waiting for the next client to pick up? And I think the root of the problem here, Your Honor, is that the need for a system where on each instance in which somebody is entitled to a rest break, if they get one, is something has to be hard-coded in. Not even hard-coded in, it has to be something that's given. And I think what you're saying is sometimes they may get their rest break, sometimes they don't. And what I'm saying is that if they don't get it at least once during their tenure, I've proved the injury and I think the important thing is to look... I think I see your point. You've proved the injury, although you may not have been able to establish the amount of the damage. I may not be able to precisely state the amount of damage today as to each person. Because you do have, do you not, a number of different theories for recovery of wages that otherwise should have been paid. Yes, there are multiple methods and the court didn't get to that point. What the court said is there's no proof of injury and he took the wrong standard. And what I'm saying is that if you have a proof of one time, and I think our theory is sufficient, and again it's a question of theory, we're not talking about a merits inquiry. If I have the proof that someone's been injured once because of the nature of the system, which is my theory, then later if we get to the issues of manageability, which the court didn't address, you can go into what Walmart talked about, which is let's go into a fluid recovery type situation. Because ultimately we're going to measure on a global basis how the company has harmed all the workers and we can have a fluid recovery system which splits it up and that would be constant with due process. But even if we buy your theory, I'm trying to think of this from the standpoint of the proof at trial. How would you economically and efficiently find from each of the hundreds of employees that we're talking about whether every employee at least once suffered this injury? And I think that number one, it would be through testimony and evidence of the nature of the recovery time that its design in itself is such that it winds up being a gap and that would be a merits issue based on sampling, based on different types of drivers. But that is manageable in the same way Walmart dealt with different types of workers and different types of companies. So you think you could do it by bringing in like a summary witness who would say, look I can tell based on the scheduling of the bus runs on this particular route that there's no way a driver is going to be able to get any kind of a break? I think that it's a slightly different aspect which would be that I can have an expert come in and say that it's inevitable that somebody will lose a break during their tenure within the company. And I also would say, Your Honor, that I would take witnesses from the different types of regions and companies and show that it's a consistent policy that this is an inherently defective method by which somebody can get a rest break because its design itself, its design itself is to compress. The idea is this, that if I have somebody, see my time is waning, that the idea is that we don't want people standing at the bus stop waiting for buses to come late. And it compresses and that's the whole idea and that's the evidence that would come in and in essence at the end of the day, the question is can I have a theory here that I can present evidence that someone has been harmed? And if the court got to the issue of manageability, we can have statistical samplings throughout the entire company to prove the exact amount of damage on an aggregate basis. And from that vantage point... That comes from the Walmart case, the statistical sampling? Walmart talks about that as does in California. I believe it's the Bell case. It's the whole idea and I do believe, yes, in Walmart they did talk about statistical sampling because the issue with Walmart was that there were, I think, upwards of a million employees. And the court, the majority, stated that we could have statistical sampling and through the statistical sampling we can make a global determination. And then the court sided the Helio case where there was a question of... Is that showing made before Judge Wu in this case? It didn't get to that point, Your Honor, because Judge Wu didn't talk about the issue of manageability. His problem was we couldn't show an injury and that's where his ruling stopped and there was no discussion beyond that point. Okay. Thank you, counsel. Your time has expired. We'll hear from the other side. Good morning, Your Honors. Torrey Favarotti for Appellee Veolia Transportation Services. The district court in this case clearly did not abuse its discretion in denying class certification for the two proposed classes. The court, pursuant to Rule 23b, conducted a most rigorous analysis contained in a seven-page single-space analysis of this case and determined that, one, common issues of long fact would not predominate over individual issues and that class action was not the superior means for resolution of this case. The court then looked at the record and determined that there wasn't even a common policy or practice that plaintiffs established in this case in regards to their recovery theory. First, recovery time isn't used in all contracts. It is only used on fixed-route contracts, of which there are 14. Nine of those 14, in addition to recovery time, have specific rest breaks denoted in the schedule. Did you say nine, too? Nine. Nine, too. Nine out of 14 have specific rest break times noted in the schedule in addition to recovery time. Even though plaintiffs failed to establish a common policy, the court took it the next step further. Let's look at Rule 23b. Now, there's no method of common proof that was proposed, even if they could establish a common policy. Now, what about statistical sampling? You heard that argument just made. It wasn't even proposed in their motion for class certification. The first time in which they brought up statistic sampling was in their petition for review of this court. They have to do much more than just say in the petition for review that, you know, statistic sampling is a viable means to resolution of this case. They didn't even propose that in this case, and it's not even there. This petition for review, you mean the appeal in this case? Exactly, before this court. That was the first time they even mentioned it. And the court, Judge Rue in this analysis, addressed that and said, they don't propose a common method of proof. I'm still going to evaluate the issue. In evaluating the issue, it still looks like individual issues of law and fact are going to predominate. Now, Judge Rue didn't have a foresight of two recent opinions from this court that came down after his decision, those cases of Vinole v. Countrywide and Inouye, Wells Fargo. While you're at it, what about Walmart v. Dukes? That as well. And more so dealing with the Vinole case, I'll address, and the Wells Fargo case. This court looked at the issue, and the court said, in the context of a wage and dollar class action, both Vinole and Wells Fargo dealt with in this classification case, where the employer was saying that these employees were correctly classified as exempt. And key to the outside sales exemption in that case is that the employee spent the majority of their time outside of the office. This court, in addressing that issue, said that classification was properly denied because it would require a detailed analysis into the individual experience of every single employee, the same theme as acquired in this particular instance here. Veolia. I wanted to add to that. Sure. Let's assume for purposes of discussion that there is a violation, that is, the way that Veolia organizes its drivers, that they have determined that you need 20 minutes of recovery time. Let's talk about only those that have that issue, recovery time. How would somebody challenge this except by a class action? That is, driver number one can't really prove anything but that, you know, he'll be first met with the defense that, well, he's just inefficient. That is, it seems to me that there has to be a way that if we assume that this is wrong, by saying there's no class action here, we're just saying the company really doesn't have to deal with this California law that says you have to have 10 minutes of rest time. That's not the case, Your Honor. In that context, one, outside of the class action context, an individual employee has the right to pursue their individual lawsuit. They have the right to appeal to the State Labor Board if they believe that they weren't afforded the opportunity to take a break. And in this situation, recovery time has a dual purpose, as was evidenced in the record from the 28 driver declarations that Veolia submitted in its opposition to class certification, two of which came from union presidents whose sworn job is to protect the interest of their members, that they were informed that they could take their rest breaks during recovery time, even if it meant they were late. In the AVTA handbook, there's specific codes in that manual for drivers to use to request breaks, 10-10, 10-07, and 10-100, where they can call dispatch and say, hey, I want to take a break, even if they're running late. So the recovery time, going back to your question, even if you look at the recovery time as 20 minutes, has a dual purpose. One, they can use to catch up on their schedule if need be, and then as well to take a break. And also, which complicates the issue here in this case, is that the drivers have multiple recovery opportunities during the course of the day, which affords them opportunities to take breaks, and it varies from day-to-day location, location, run-to-run. There's no way that you could look at this from a statistical standpoint and make an evaluation. You're going to have to look at every single day. And even if you have a run that you look at on a very single day, it could vary to the next day. Well, maybe I have 20 minutes of recovery time here, but there was bad weather. There was snow. There was an accident. I had impaired clients in wheelchairs that took a little bit more time. It's going to vary from day-to-day, and that cannot be decided on a class-wide basis here. That's what this court decided in Vannoli, and that's what this court also decided in Wells Fargo case, the how. Vannoli does not have across-the-board policy regarding how rest breaks are provided because the services vary from location to location. Just like in Vannoli, there was no policy regarding how the individual spent their time as outside sales employees. The court, this court, in its analysis said that that's going to entail a lot of individual inquiry and the circumstances that are going to vary based upon the record there and also the record before Judge Wu from person-to-person, day-to-day. It cannot be decided on a collective basis. Is there anything in Walmart that sheds any additional light here? I don't believe so, Your Honor. Judge Wu's decision was also consistent with at least eight other district court decisions deciding similar meal and rest period class action cases that really individual issues are going to predominate. Cases involving McDonald's, a more so applicable case involving FedEx and Brown, Brown versus FedEx, where the court in a very similar case, looking at drivers, held that it's going to require an individual inquiry to determine whether or not there was pressure on these drivers to make these delivery timetables where they did not have an opportunity to take a break. Our case is even more compelling against certification than the Brown case because in the Brown case, there was no built-in time between deliveries for individuals to have rest break opportunities. In our case, we do put those in place through recovery time zones for those contracts that do have recovery stops. So that just shows that there is even more individualized issues here than there were actually in the Brown versus FedEx case. This court also in Wells Fargo, the same day that this court decided the Manoli case, looked at a district court decision certifying a class of people based upon the outside sales exemption. And this court, looking at it, said, you know, the court made an analysis that there would be a lot of individual inquiry required in this case. But it excluded that evidence. It relied upon the wholesale application of then classifying employees as exempt in that case. And this court said, you can't do that. Individual issues are going to predominate. The district court actually made that assessment, but it excluded it in its analysis. So I think that there's a strong body of law and precedent, recent precedent from this court that supports the judge's decision. Additionally, I'd like to note that the other side mentioned another case involving ConocoPhillips that came down from this court recently. That case is easily distinguished because there the district court made clear error in requiring an insurance from the plaintiff that they would prevail on their theory before he agreed to certify the case. And that insurance was, as this court said, an insurmountable standard that it could not meet. In regards to other cases that the other side cited here, state court cases that are clearly distinguished, VIVA was one of the cases that they had mentioned in their papers. That was decided under state law, not federal rule, civil procedure rule 23. VIVA case is easily distinguished because it involves one location dealing with a uniform policies and procedures. Ours deals with multiple locations across the state that have varied circumstances and policies and procedures. I see that my time is up. Thank you, counsel. You have exceeded your time, counsel. We follow the rules. The case just argued will be submitted for decision, and we will take our morning break for 10 minutes. All rise. The summons of the court starts at 10 minutes.
judges: Lefkow, O'scannlain, Tallman